IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| TRACY LYNN HALLIBURTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:14-CV-00268-NKL |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Tracy Lynn Halliburton seeks review of the Administrative Law Judge's decision denying her application for Supplemental Security Income (SSI) benefits and Social Security Disability Insurance (SSDI) benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

**I.  Background**

Halliburton was denied benefits by the ALJ on February 13, 2013. [Tr. 39]. Halliburton contests only the ALJ's finding that "there are jobs that exist in significant numbers in the national economy that she can otherwise perform throughout the course of a normal work schedule on a regular and continuing basis." [Doc. 11, p. 28-33; Tr. 38].

After listening to Halliburton's testimony at an administrative hearing and reviewing the medical evidence and opinions submitted by Halliburton, the ALJ concluded that Halliburton suffered from a number of medical impairments that were

1

jointly classified as "severe." [Tr. 21-22]. The ALJ then assessed Halliburton with the following Residual Functional Capacity (RFC):

> [C]laimant retains the [RFC] to lift, carry, push, or pull up to 10 pounds occasionally and lesser weights frequently. She can sit 6 hours total, and stand and/or walk 2 hours total, each throughout the course of a normal 8-hour workday with normal breaks. She is precluded from jobs requiring climbing ladders, ropes, or scaffolds, and is otherwise restricted to jobs requiring no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling. She is restricted to jobs that require no more than occasional handling and fingering with the right upper extremity, but is capable of frequent handling and fingering with the left upper extremity. Due to her combined impairments, she is limited to simple, unskilled work of SVP-2 or less, but she otherwise retains the capacity to understand, remember, and carry out simple instructions or tasks; use simple judgment; respond appropriately to supervisors, coworkers, and usual work situations; and deal with changes in a typical work setting.

[Tr. 23].

The ALJ next evaluated Halliburton's ability to work based on his RFC findings and vocational expert testimony regarding the jobs available to a person with Halliburton's RFC. At the administrative hearing, the vocational expert stated that given Halliburton's RFC restrictions, she would be able to perform jobs including that of a call-out operator and a surveillance system monitor. [Tr. 87]. She stated that there are 750 call-out operator jobs and 930 surveillance system monitor jobs in Missouri. *Id.* She finally noted that "[t]hose really are the only two jobs that only had occasional handling and fingering." *Id.* Based on the vocational expert's testimony, the ALJ found that Halliburton was not entitled to benefits because jobs existed in significant numbers in the national economy that Halliburton could perform. [Tr. 38].

2

## II. Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Halliburton contends that the ALJ's decision is not supported by substantial evidence because he failed to accurately inquire about Halliburton's abilities in light of her RFC. Specifically, the ALJ asked the vocational expert if jobs existed in the national economy for a person "capable of lifting and carrying up to 10 pounds," along with Halliburton's other restrictions. [Tr. 85]. Halliburton notes that the ALJ concluded in the RFC determination that she could only "lift, carry, push, or pull up to 10 pounds occasionally and lesser weights frequently." [Tr. 23]. As the ALJ did not present to the vocational expert Halliburton's limitations with regard to pushing and pulling, she contends his determination is not supported by substantial evidence.

Though the ALJ's hypothetical question to the vocational expert did not exactly mirror his RFC determination, the limitations posed to the vocational expert accurately conveyed the ALJ's conclusion that Halliburton was capable of only sedentary work.

3

"Sedentary Work" is defined by the Dictionary of Occupational Titles (DOT) as involving "exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, App. C. (4th ed. 1991). As the ALJ reasonably conveyed Halliburton's limitation to sedentary work, the minor difference in the question posed to the vocational expert and the assessed RFC constitutes harmless error that had no effect on the outcome of the case.

Halliburton further contends that the ALJ erred by concluding that significant jobs exist in the national economy to accommodate her RFC. She argues that because only two out of two hundred sedentary unskilled positions are available to her given her limitation to only occasional handling and fingering, she is constrained to employment in only one percent of sedentary unskilled occupations, which is not a significant number of jobs.

The percentage of sedentary unskilled occupations available to Halliburton is irrelevant to the ultimate question of whether a significant number of jobs exist that she could perform. The vocational expert noted in her testimony that 750 call-out operator jobs and 930 surveillance system monitor jobs exist in Missouri. [Tr. 87]. The Eighth Circuit has concluded that much lower numbers of available jobs constitute "significant" numbers. *See Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs in Missouri was a significant number); *see also Welsh v. Colvin*, 2014 WL 4290373 (8th Cir. 2014) (suggesting that fewer than 330 available jobs in Iowa was a significant number of

jobs).  As such, substantial evidence exists to support the ALJ's conclusion that Halliburton has jobs available to her and is not entitled to disability benefits.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is affirmed.

<u>s/ Nanette K. Laughrey</u>
NANETTE K. LAUGHREY
United States District Judge

Dated: <u>November 24, 2014</u>
Jefferson City, Missouri

5

Case 4:14-cv-00268-NKL   Document 16   Filed 11/24/14   Page 5 of 5